STANLEY v. MOORE

[113 N.C. App. 523 (1994)]

CAROLYN STANLEY AND RALPH ALLEN TRIVETTE v. JOHN MOORE AKA
JOHN TYREE

No. 9225DC183

(Filed 1 February 1994)

**Ejectment § 37 (NCI4th)— wrongful eviction—trespass—treble
damages for unfair practice not allowed**

Where plaintiff tenants' claims for wrongful eviction and
trespass arose under N.C.G.S. § 42-25.6, plaintiffs were precluded
from recovering treble damages and additional attorney's fees
for an unfair practice under N.C.G.S. § 75-1.1 by the provision
of N.C.G.S. § 42-25.9(a) expressly prohibiting treble damages
in actions under the Ejectment of Residential Tenants Act.

**Am Jur 2d, Landlord and Tenant §§ 323 et seq.**

Appeal by plaintiffs from judgment and order entered 19
September 1991 and filed 23 September 1991 by Judge Jonathan
Jones in Caldwell County District Court. Heard in the Court of
Appeals 2 February 1993.

This case began on 27 February 1991 as an action grounded
in wrongful eviction, trespass, and unfair trade practices. The plain-
tiffs sought damages for the above claims from the defendant
landlord, whom they alleged constructively evicted them from a
mobile home they rented.

The defendant failed to respond to the complaint, and on 4
April 1991, a motion for entry of default was made by plaintiffs'
counsel. On 30 July 1991, plaintiffs' counsel moved for default judg-
ment. A hearing was held on the issue of damages in Caldwell
County District Court on 12 September 1991. The trial judge found
that the plaintiffs had been damaged, pursuant to N.C. Gen. Stat.
§ 42-25.9, in the amount of $798.00 in actual damages. He further
awarded the plaintiffs $1.00 in nominal damages and $100.00 punitive
damages on the trespass claim.

Additionally, the judge found that on 4 April 1991, the court
had entered an order for contempt against the defendant for his
failure to comply with the court's previous orders, specifically a
temporary restraining order and a preliminary injunction entered
on 27 February 1991 and 13 March 1991 respectively, both of which
ordered the defendant to restore the plaintiff's utilities. As part

of the contempt order entered in April, the court ordered the defendant to pay to the plaintiffs $820.00 in expenses and $1,000.00 in attorney's fees. At the September hearing, the court entered a second order for contempt for the defendant's failure to comply with the previous contempt order and ordered the defendant to pay $798.00 to the plaintiffs (or get set-off in a like amount), and pay the $1,000.00 in attorney's fees.

The court denied the claim for relief pursuant to the Unfair Trade Practices Act and denied the application for attorney's fees. Counsel for the plaintiffs moved for reconsideration of the Unfair Trade Practices Act determination and its denial of further attorney's fees. The court ruled that it would not reconsider either claim. The plaintiffs appeal the trial court's denial of these claims.

*Catawba Valley Legal Services, Inc., by Martha Chapman, for plaintiff-appellants.*

*No brief filed for defendant-appellee.*

ORR, Judge.

The plaintiffs assign as their only error before this Court the trial court's denial of their claim for damages under the North Carolina Unfair Trade Practices Act and their claim for attorney's fees pursuant to that Act as a result of their constructive eviction from their home. We find that N.C.G.S. § 42-25.9 expressly precludes treble damages as a remedy in actions arising under that Article and therefore affirm the order of the court.

The plaintiffs entered into an oral agreement to lease a mobile home owned by the defendant for $70.00 per week. This lease was entered into with the defendant's mother sometime in July 1990. At the time, the defendant was living out of state. In mid-February 1991, the defendant came to the plaintiffs' home and demanded that they move immediately. The plaintiffs called the sheriff's department who explained to the defendant that summary ejectment procedures were necessary in order to regain possession of the property. That same day, the defendant cut the water supply to the residence and removed the thermostat from the water heater.

On the following day, the defendant forced his way into the residence and demanded to know why the plaintiffs had not moved. During this encounter, he forcibly removed the breaker box from the bedroom wall, leaving exposed live wiring. The plaintiffs were

able to restore electrical service to the residence that day; but on or about 22 February, the defendant came to the home and again removed the breaker box. The plaintiffs called the electric company to restore electrical service. However, while utility workers were in the process of restoring service, the defendant returned to the residence and cut the underground electrical wiring leading to the home with a hatchet. The utility company could not restore service due to the extensive damage done to the outside lines to the residence.

The plaintiffs were left with no water or electricity, and were forced to buy bottled water and other sources of heat. Over $200.00 worth of food was spoiled due to lack of refrigeration. At the time of the above incidents, the household consisted of the plaintiffs and four minor children, including a four-month-old infant.

As plaintiffs correctly assert, it is well settled in North Carolina that in order "[t]o prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff . . . ." *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991). It is also clear that a tenant is a consumer for purposes of the Act and that the leasing of residential property is within the purview of N.C.G.S. § 75-1.1, *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), *disc. review denied*, 294 N.C. 441, 241 S.E.2d 843 (1978), and that N.C.G.S. § 42-40(3) defines "landlord" as "any owner and any rental management company, rental agency, or any other person having the actual or apparent authority of an agent to perform the duties imposed by this Article."

In *Allen v. Simmons*, 99 N.C. App. 636, 394 S.E.2d 478 (1990), this Court stated that "[w]hether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 643-44, 394 S.E.2d at 483. Additionally, this Court has consistently held that "where a tenant's evidence establishes the residential rental premises were unfit for human habitation and the landlord was aware of needed repairs . . . then such evidence would support a factual finding by the jury that

the landlord committed an unfair or deceptive trade practice." *Foy v. Spinks*, 105 N.C. App. 534, 540, 414 S.E.2d 87, 90 (1992). In the case *sub judice*, there is no question that the plaintiffs have clearly established a claim meeting the above requirements.

However, under these facts, we are bound by the holding in *Dobbins v. Paul*, 71 N.C. App. 113, 321 S.E.2d 537 (1984). There, the plaintiff was wrongfully evicted by her landlord and brought claims for an accounting and refund of her security deposit, compensatory damages for her eviction and breach of the warranty of quiet enjoyment, punitive damages, treble damages for unfair trade practices, and reasonable attorney's fees. On appeal from directed verdicts in favor of the defendant landlord on all claims, our Court held that

[u]nder our Ejectment Of Residential Tenants Act (the Act), N.C. Gen. Stat. §§ 42-25.6, -25.9, . . . defendants' exclusive remedy to regain possession of their house was by means of statutory summary ejectment proceedings pursuant to N.C. Gen. Stat. §§ 42-26 to -36.1 (1976). Plaintiff's evidence having shown that she was wrongfully evicted . . . after her lease was in effect, plaintiff's statutory remedy for damages under G.S. § 42-25.9(a) attached. . . .

In that the statute expressly disallows treble or punitive damages in such cases, it is clear that the trial court correctly allowed defendants' motion for a directed verdict as to . . . such damages.

*Id.* at 117, 321 S.E.2d at 540-41 (footnotes omitted).

N.C. Gen. Stat. § 42-25.9(a) (1984) states:

If any lessor, landlord, or agent removes or attempts to remove a tenant from a dwelling unit in any manner contrary to this Article, the tenant shall be entitled to recover possession or to terminate his lease and the lessor, landlord or agent shall be liable to the tenant for damages caused by the tenant's removal or attempted removal. Damages in any action brought by a tenant under this Article shall be limited to actual damages as in an action for trespass or conversion and *shall not include punitive damages, treble damages or damages for emotional distress.*

STANLEY v. MOORE

[113 N.C. App. 523 (1994)]

(Emphasis added.) As the *Dobbins* court concluded, "under explicit language of the Act, plaintiff can recover only her actual damages." *Dobbins* at 118, 321 S.E.2d at 541.

While we are bound by the rule which denies a tenant recovery of punitive or treble damages as a result of her constructive eviction due to the exclusivity of the remedies under N.C.G.S. § 42-25.9(a), we note that such a result would appear inappropriate when it is clear that in North Carolina a landlord may be held liable pursuant to G.S. § 75-1.1 *et seq.*, for merely failing to maintain a rental unit in fit condition. Common sense dictates that if a landlord must make necessary repairs to a rental unit in order to avoid liability for treble damages and attorney's fees under the Unfair Trade Practices Act, *see e.g.*, *Allen*, 99 N.C. App. 636, 394 S.E.2d 478, and *Foy*, 105 N.C. App. 534, 414 S.E.2d 87, he should not be able to actively create an uninhabitable condition in the rental unit in order to force a tenant to leave, exposing himself only to actual damages incurred by the tenant under G.S. § 42-25.9(a). By engaging in intentionally tortious conduct, he could limit his liability, unless a plaintiff elects to forego the remedies of G.S. § 42-25, and brings suit specifically pursuant to Chapter 75.

In the instant case, the plaintiffs' claims for relief all arose under N.C.G.S. § 42-25.6. Consequently, as a matter of law, they were limited to the statutory remedies of G.S. § 42-25.9(a). We therefore find that the trial court correctly denied the plaintiffs' claims for treble damages and additional attorney's fees and affirm the decision of the trial court.

Affirmed.

Judges EAGLES and WYNN concur.