D. GRADY MORETZ, JR., Successor Trustee for the COURTNEY ANN MORETZ AND WHITNEY RHYNE MORETZ TRUST, Plaintiff v. PAUL E. MILLER, JR., Trustee, and SOUTHERN NATIONAL BANK OF NORTH CAROLINA, Defendants

No. COA96-443

(Filed 17 June 1997)

**Fiduciaries § 11 (NCI4th); Unfair Competition or Trade Practices § 8 (NCI4th)— Uniform Fiduciaries Act—violation by drawee bank—not unfair trade practice**

A bank's violation of the provision of the Uniform Fiduciaries Act, N.C.G.S. § 32-9, which makes a drawee bank strictly liable to the principal when the trustee, in the process of satisfying a personal debt to the drawee bank with a check drawn upon an

---

account of the principal, breaches his fiduciary duty to the principal, does not constitute an unfair trade practice under N.C.G.S. § 75-1.1, particularly where the jury found that the bank had no actual knowledge of the ·trustee's breach of his obligations and did not act in bad faith.

**Am Jur 2d, Banks §§ 521, 676; Trusts § 208.**

Appeal by plaintiff from judgment entered 9 February 1996 by Judge Loto G. Caviness in Watauga County Superior Court. Heard in the Court of Appeals 9 January 1997.

*Bledsoe & Bledsoe, P.L.L.C., by Louis A. Bledsoe, Jr. and Margaret M. Bledsoe, for plaintiff-appellant.*

*E. James Moore for defendant-appellees.*

JOHN, Judge.

Plaintiff appeals the trial court's ruling that defendant Southern National Bank of North Carolina's (SNB) violation of the Uniform Fiduciaries Act (the Act), N.C.G.S. § 32-9 (1996), did not constitute an unfair trade practice under N.C.G.S. § 75-1.1 (1994), and the court's consequent refusal to award plaintiff treble damages and counsel fees. We affirm the trial court.

Pertinent procedural and factual background includes the following: On 15 December 1982 a trust (the Trust) was established from assets of the grandparents of sisters Courtney and Whitney Moretz. The girls' father, Joseph Moretz (Moretz), was appointed trustee. The assets of the Trust included real and personal property.

Moretz obtained a $53,000.00 unsecured loan from SNB in his individual capacity on 7 October 1987. When the loan became due in January 1990, SNB required collateral to secure the loan and extend it for an additional term. Following an offer of real property as collateral by Moretz, SNB's attorney discovered the property belonged to the Trust and advised Moretz it did not qualify to serve as security for the latter's personal debt. The attorney nonetheless suggested the property could be pledged as collateral for a loan to the Trust, and the proceeds thereof applied to clear the personal loan of Moretz. However, the attorney further indicated such action would require the specific authorization of the beneficiaries of the Trust, and that affidavits containing their authorization should be procured. An affidavit was presented from Courtney Moretz and the loan satisfying the

personal obligation of Moretz was concluded. The real property of the Trust served as collateral.

Moretz died in 1990. On 13 August 1991 plaintiff D. Grady Moretz, Jr., Successor Trustee for the Trust, instituted suit against defendants seeking, *inter alia*, damages, an injunction "enjoining defendants from any sale of the encumbered trust real estate," and "resc[ission] of the loan transaction and cancel[ation of] the Note and Deed of Trust on the property" of the Trust. Against SNB specifically, plaintiff directed claims of breach of trust, violation of the Act, and unfair trade practices. Following trial, the jury returned a verdict as follows:

1. Was the transaction between the trustee and the beneficiaries open, honest and fair with no disadvantage being taken of either beneficiary by the Trustee of the trust?

Answer: No

2. Did the defendant Southern National Bank apply the proceeds of this loan secured by trust property to a personal debt of the Trustee with actual knowledge of a breach of Trustees obligations, or with knowledge of such facts that the bank's actions amounted to bad faith?

Answer: No

The trial court interpreted the jury's answer to the second issue as a verdict in favor of defendants and entered judgment accordingly. Plaintiff moved for judgment notwithstanding the verdict on grounds that the jury's answer on the first issue indicated a breach of trust by Moretz, the original trustee, and that SNB should be held liable as a matter of law. The trial court denied plaintiff's motion. On appeal, this Court reversed in an unpublished opinion, *Moretz v. Miller* (COA93-323), and remanded the case to the trial court upon our holding that the jury verdict rendered defendants liable under G.S. § 32-9 for the trustee's actual breach of his fiduciary obligation.

Following remand, plaintiff and defendants moved for entry of judgment in accordance with the decision of this Court. On 9 February 1996, the trial court entered judgment proclaiming the note and deed of trust encumbering the Trust property null and void, and denying plaintiff's motion to declare SNB's actions constituted an unfair trade practice entitling plaintiff to treble damages and an award of counsel fees. Plaintiff appeals.

MORETZ v. MILLER

[126 N.C. App. 514 (1997)]

Our courts have not previously addressed with specificity the sole issue before us, *i.e.*, whether violation of the Act constitutes an unfair trade practice pursuant to G.S. § 75-1.1. However, the North Carolina Supreme Court has held violation of a statutory provision designed to protect the consuming public may constitute an unfair and deceptive practice as a matter of law. *See Stanley v. Moore*, 339 N.C. 717, 724, 454 S.E.2d 225, 229 (1995) (violation of the Ejectment of Residential Tenants Act); *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986) (violation of statute regulating insurance industry); and *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 98-99, 331 S.E.2d 677, 682 (1985) (violation of statute regulating employment practices, G.S. § 95-47.6(2)(9)). Further, our Supreme Court has also determined a practice to be unfair under G.S. § 75-1.1 when it offends established public policy. *See Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). With these authorities in mind, we turn to an examination of the Act and the circumstances *sub judice*.

The Act provides as follows:

If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith. *If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check.*

G.S. § 32-9 (emphasis added).

According to the plain meaning of the italicized portion of the section, a drawee bank is strictly liable to the principal when the trustee, in the process satisfying a personal debt to the drawee bank with a check drawn upon an account of his principal, breaches his fiduciary duty to the principal. The statute does not limit the liability of a drawee bank under such circumstances to instances of its actual or constructive knowledge of the trustee's breach of fiduciary duty. Notwithstanding, we conclude violation of this provision of the Act under the circumstances herein did not constitute an unfair or deceptive trade practice.

First, the instant violation of the section of G.S § 32-9 at issue differs from statutory violations which have been held unfair trade practices in that G.S. § 32-9 imposes liability upon a drawee bank for breach of fiduciary duty by a *trustee*, not by virtue of the *bank's* own unfair or deceptive conduct. *See Stanley*, 339 N.C. at 724, 454 S.E.2d at 229 (unfair trade practice when landlord terminated water supply to tenant's dwelling, removed thermostat from water heater, forced way into the home, and cut electrical wiring to residence in violation of Residential Tenants Act); *Pearce*, 316 N.C. at 470, 343 S.E.2d at 179 (unfair trade practice when employee of insurance company misinformed plaintiff about insurance coverage in violation of statute regulating insurance industry); and *Winston Realty Co.*, 314 N.C. at 98-99, 331 S.E.2d at 682 (unfair trade practice by private personnel agency which falsely and fraudulently advertized availability of "pre-screened, qualified" applicants, but did not investigate or verify applicants, and which violated G.S. 95-47.6(2),(9)). In *Stanley, Pearce* and *Winston*, the defendants themselves had committed an overt act in violation of a statute designed to protect the consuming public.

Second, in general, whether a practice is unfair or deceptive is generally dependent upon the facts of each case. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A practice is unfair when it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* Neither fraud, bad faith, deliberate acts of deception or actual deception need be shown, but the acts must have had a tendency or capacity to mislead or created the likelihood of deception. *Chastain v. Wall*, 78 N.C. App. 350, 356, 337 S.E.2d 150, 153-54 (1985), *disc. review denied*, 316 N.C. 375, 342 S.E.2d 891 (1986). In the case *sub judice*, the nature and quality of defendant bank's conduct differs from decisions imposing liability for an unfair or deceptive trade practice. In *Stanley, Pearce* and *Winston* the Supreme Court considered unscrupulous and offensive conduct by the defendants. By contrast, the jury verdict in the case *sub judice* determined SNB had no actual knowledge of the trustee's breach of his obligations nor knowledge of such facts that its actions amounted to bad faith. The sole legal nexus upon which liability was imposed upon SNB was the concluding provision of G.S. § 32-9.

Finally, a ruling that the section of G.S. § 32-9 at issue comprised an unfair or deceptive trade practice would appear to contravene legislative intent. In general, the Act was enacted for the purpose of "relax[ing] the common-law standard of care owed by banks to prin-

cipals when dealing with their fiduciaries." *Edwards v. Northwestern Bank,* 39 N.C. App. 261, 267, 250 S.E.2d 651, 656 (1979). In the case *sub judice,* to characterize as an unfair or deceptive trade practice violation of the portion of G.S. § 32-9 that imposes strict liability on a drawee bank which, albeit in "good faith," accepts a check drawn or delivered by a trustee in violation of the latter's fiduciary duty, would obtain a result contrary to the legislative purpose.

In short, we hold SNB's violation of the concluding portion of G.S. § 32-9, without more (particularly in view of the jury's factual determination of the absence of actual knowledge or bad faith by SNB), did not constitute an unfair or deceptive trade practice under G.S. § 75-1.1. Accordingly, the trial court did not err by declining to award plaintiff treble damages and counsel fees.

Affirmed.

Judges EAGLES and COZORT concur.