K & S ENTERPRISES, Plaintiff v. KENNEDY OFFICE SUPPLY COMPANY, INC., Defendant

No. COA98-1391

(Filed 19 October 1999)

### 1. Landlord and Tenant— commercial lease—leaking roof

The trial court did not err by concluding as a matter of law that defendant-tenant breached a lease agreement by terminating the lease and vacating the premises where defendant first became aware of a persistent leaking roof immediately after taking possession, suffering damage to his inventory and merchandise. The burden of fixing the roof rested on plaintiff, but the fact that defendant remained in the building for three years and eight months is evidence that he was not prevented from the full use and enjoyment of the building.

### 2. Landlord and Tenant— commercial lease—implied warranty of habitability

The doctrine of implied warranty of habitability did not apply to the commercial lease of a building with a leaking roof.

### 3. Landlord and Tenant— commercial lease—leaking roof—no constructive eviction

The trial court did not err in an action without a jury by concluding that defendant was not constructively evicted as a matter of law from a commercial building with a leaking roof where plaintiff's failure to repair the roof did not render the premises untenable and defendant did not abandon the premises within a reasonable time.

### 4. Landlord and Tenant— commercial lease—leaking roof—covenant of quiet enjoyment

A commercial tenant of a building with a leaking roof was not entitled to vacate the premises under the claim that plaintiff had breached the implied covenant of quiet enjoyment.

### 5. Appeal and Error— preservation of issues—trial without jury—exceptions to findings of fact

In a trial without a jury involving a commercial tenant who had vacated the premises early due to a leaking roof, the defendant preserved for appeal the issue of whether he was obligated to pay $10,018.10 by his exception to the conclusion that he was

entitled to a verdict in that amount even though he did not except to another finding which represented the sum of the various bills in issue but did not indicate that defendant was obligated to pay that amount. Moreover, defendant's failure to except to a finding that he had assumed under the lease the responsibility for utilities during the term of the lease meant that this finding (which was inconsistent with his argument that he was responsible only for utilities used) was presumed correct.

**6. Landlord and Tenant— commercial lease—damages for breach—utilities**

The trial court, sitting without a jury, had ample support for its conclusion that plaintiff was entitled to a verdict representing the sum of utilities bills and past due rent.

Judge GREENE dissenting.

Appeal by defendant from judgment entered 30 June 1998 by Judge John W. Smith in New Hanover County District Court. Heard in the Court of Appeals 24 August 1999.

*Donald E. Britt, Jr. for plaintiff-appellee.*

*H. Spencer Barrow and George B. Currin for defendant-appellant.*

TIMMONS-GOODSON, Judge.

On 12 April 1993, K & S Enterprises, Inc. ("plaintiff") leased property to Kennedy Office Supply Company, Inc. ("defendant") for the operation of defendant's retail office supply business. The term of the written lease prepared by plaintiff and executed by the parties was four (4) years, beginning 12 April 1993 and ending 11 April 1997, at a rental rate of $2,450.00 per month.

The roof of the building leaked before defendant took possession, and plaintiff was aware of this condition. On roughly five (5) occasions prior to leasing the building to defendant, plaintiff had employed All Span Building Systems, Inc. ("All Span") to repair the leaks. During lease negotiations, plaintiff did not advise defendant of the leaks, and defendant did not inquire whether the building leaked, nor did he make any inspection.

Defendant became aware of the leaks immediately after taking possession of the building. He suffered damage to his inventory and

merchandise. While defendant did not provide written notification to plaintiff of any repairs needed, defendant communicated in person, on the telephone, and through telephone messages with plaintiff regarding leaks in the building.

The parties dispute whether the vertical facade attached to the roof created structural defects which caused the leaks. The facade was removed in late November or early December 1996.

Despite the persistent leaking, defendant continued in possession of the premises for a period of three (3) years and eight (8) months. On 31 December 1996, however, defendant vacated the premises and paid no further rent.

On 30 June 1998, the trial court entered a written judgment containing the following pertinent Findings of Fact:

1. The Plaintiff and Defendant entered into a written lease agreement dated April 12, 1993, for property located at 109 North Third Street, Wilmington, North Carolina[.]

. . .

3. The lease was for a period of four years and was to end on April 11, 1997.

4. The Defendant vacated the premises on December 31, 1996.

. . .

6. The property was not re-leased until after April 11, 1997.

7. The Defendant did not pay rent for the period from December 31, 1996 until the lease term expired on April 11, 1997.

8. Under the terms of the lease, defendant assumed responsibility for water, sewer and power bills incurred during the term of the lease, which he paid until he vacated the property but not thereafter.

9. The Defendant, pursuant [sic] Paragraph 6 of the lease agreement, was required to "make all necessary repairs to the premises, including the roof of the building situated thereon, as may be necessary or required to maintain the building in the condition in which the same existed at the beginning of this lease, except that Lessee shall not be responsible or liable for exterior or structural damage or repair."

K&S ENTERS. v. KENNEDY OFFICE SUPPLY CO.

[135 N.C. App. 260 (1999)]

10. Paragraph 12 of the lease provides: "The Lessee shall have the right to terminate this lease if at any time it is prevented from the full use and benefit and enjoyment of the building by reason of law, zoning ordinance, restrictions or any other cause beyond lessee's control."

. . .

12. During lease negotiations between the Plaintiff and the Defendant, the Plaintiff did not advise the Defendant of prior problems relating to leaks to the building nor did the Defendant inquire of the Plaintiff if the building leaked or make any inspections of the building. Plaintiff made no misrepresentations, and his employee who continued to work for Defendant was aware of the leaks and previous repair efforts. An inspection would have disclosed the condition.

. . .

14. Prior to leasing the building from the Plaintiff, the Defendant conducted no inspections of the premises, did not go onto the roof of the premises and did not question the Plaintiff concerning any problems with the building.

. . .

20. The roof leaked before [Defendant] took possession, and [Defendant] became aware of the leaks immediately after taking possession; but [Defendant] continued in possession without [giving Plaintiff] any notice of any contention that the leaks constituted any breach of the lease agreement for a period of three years and eight months.

21. There is some evidence to support a conclusion that leaking was exacerbated by a vertical facade on the front wall that was attached to the roof. The facade has since been removed. After it was removed, the leaking apparently abated. The evidence does not by its greater weight establish that the leaks were due to any structural defect for which Plaintiff would be responsible under the terms of the written lease.

22. The evidence is not persuasive by its greater weight that the leaking roof denied Defendant the use and benefits to which he was entitled under the terms of the lease.

. . .

24. The amount of the past due rent including water, sewer and power is $10,018.10.

Based on its Findings of Fact, the trial court entered the following pertinent Conclusions of Law:

1. The Defendant breached the lease agreement.

. . .

3. Defendant was not constructively evicted.

4. Plaintiff did not breach the agreement, and Plaintiff subsequently performed his obligations.

Defendant appeals from the judgment of the trial court awarding plaintiff $10,018.10 plus interest and costs.

---

**[1]** Defendant first argues that the trial court committed reversible error in concluding as a matter of law that defendant breached the lease agreement by terminating the lease and vacating the premises. We cannot agree.

The case at bar was tried before the court without a jury. When the trial court sits as a fact finder, its findings of fact generally have the weight of a jury verdict and are conclusive on appeal if supported by competent evidence. *Newland v. Newland*, 129 N.C. App. 418, 420, 498 S.E.2d 855, 857 (1998). This is true even though there may be evidence which would support contrary findings. *Williams v. Insurance Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975). In reviewing the trial court's conclusions of law, the appellate court must determine if the findings of fact supported the trial court's conclusions of law. *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996); *Reeves v. B & P Motor Lines, Inc.*, 82 N.C. App. 562, 564, 346 S.E.2d 673, 675 (1986).

Defendant correctly asserts that plaintiff bore the burden of repairing the leaks. Pursuant to the Lease Agreement: "Lessee shall make all necessary repairs to the premises, including the roof of the building situated thereon, as may be necessary or required *to maintain the building in the condition in which the same existed at the beginning of this lease*[.]" (Emphasis added).

The trial court found that the roof leaked before defendant took possession and that defendant became aware of the leaks immediately after taking possession. Plaintiff admits that the roof leaked

prior to defendant's taking possession and that he periodically employed All Span to remedy the problem.

Defendant presented evidence that the roof leaked the first time that it rained after defendant took possession and that it continued to leak each time it rained during defendant's possession. While plaintiff argues in his brief that he fixed "each and every leak" before defendant took possession, Mr. Pope, plaintiff's own witness and the president of K & S Enterprises, testified that he sent All Span to the building to fix leaks *after* defendant occupied it. All Span billed Mr. Pope for this service and Mr. Pope paid the bill on 2 May 1993, several weeks after defendant took possession on 12 April 1993.

Furthermore, an employee of All Span testified to the difficulty of eliminating each leak in a roof which has a tendency to leak: "We could not exactly [sic] where it's coming from . . . . It could be that leak. So I fixed that one and if I find other place, fix that. And then the next rain comes, went back there. Some places that we have corrected, some places we haven't. It's hard to detect."

Based on the trial court's findings, it is clear that the burden of fixing the roof rested on plaintiff. Defendant performed its duty under the Lease Agreement to maintain the premises in the condition in which it found them; the building leaked when defendant took control and when defendant vacated it.

Having determined that plaintiff bore the responsibility for the leaks, we now address the issue of whether the leaks entitled defendant to vacate the premises lawfully prior to the expiration of the lease. According to the Lease Agreement, "[t]he Lessee shall have the right to terminate this lease if at any time it is prevented from the full use and benefit and enjoyment of the building by reason of law, zoning ordinance, restrictions or any other cause beyond Lessee's control."

Defendant correctly asserts that Paragraph 12 of the Lease Agreement does not stipulate that defendant must vacate the premises within a set time period once he is disturbed in his use and enjoyment. Nonetheless, the fact that defendant remained in the building for three (3) years and eight (8) months despite his claim that the building leaked immediately after he took possession is competent evidence that he was not prevented from the full use and enjoyment of the building.

Had defendant been disturbed in his use and possession, he would have taken pains to put plaintiff on notice that the leaks constituted a breach of the Lease Agreement. However, defendant never put his complaint in writing. While one employee of defendant orally communicated with plaintiff concerning the leaks, defendant's efforts to put plaintiff on notice consisted largely of leaving telephone messages.

The trial court found that "[t]he evidence is not persuasive by its greater weight that the leaking roof denied Defendant the use and benefits to which he was entitled under the terms of the lease." We believe that there is competent evidence in the record to support this finding as well as the conclusion of law that defendant breached the Lease Agreement by vacating the premises prior to the date of expiration. Thus, this assignment of error is overruled.

[2] We find no merit in defendant's claim that plaintiff breached the implied warranty of habitability. Pursuant to the Residential Rental Agreements, the landlord has a duty to "keep the premises in a fit and habitable condition." N.C. Gen. Stat. § 42-42(a)(2) (Cum. Supp. 1998). However, North Carolina General Statutes sections 42-38 *et. seq.* do not apply in the case *sub judice* because defendant was not renting a dwelling. *See* N.C. Gen. Stat. § 42-38 (1994). In tenancies not governed by the Residential Rental Agreements, there is no implied covenant that the premises are in a habitable condition. *Jackson v. Housing Authority of High Point*, 73 N.C. App. 363, 372, 326 S.E.2d 295, 300 (1985), *aff'd*, 316 N.C. 259, 341 S.E.2d 523 (1986). Therefore, the doctrine of implied warranty of habitability does not apply in the present case.

[3] On his second assignment of error, defendant argues that the trial court committed reversible error in concluding as a matter of law that defendant was not constructively evicted. We disagree.

Constructive eviction occurs when an act of a landlord deprives his tenant of "that beneficial enjoyment of the premises to which he is entitled under his lease," causing his tenant to abandon them. *Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 92, 394 S.E.2d 824, 830, *disc. review denied*, 327 N.C. 636, 399 S.E.2d 328 (1990). In other words, constructive eviction takes place when a landlord's breach of duty under the lease renders the premises untenable. *Id.* A tenant seeking to show constructive eviction has the burden of showing that he abandoned the premises within a reasonable time after the landlord's wrongful act.

*McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 466 S.E.2d 324, *disc. review denied*, 343 N.C. 307, 471 S.E.2d 72 (1996).

Plaintiff's failure to repair the roof did not render the premises untenable. Significantly, defendant remained in the premises for three (3) years and eight (8) months even though defendant asserts that the leaks began immediately after he took possession of the premises. Defendant did not abandon the premises within a reasonable time. Thus, the trial court did not err in concluding that defendant was not constructively evicted as a matter of law and was not entitled to terminate the lease and vacate the premises under the terms of the Lease Agreement.

[4] Defendant also claims that it was entitled to vacate the premises because plaintiff breached the implied covenant of quiet enjoyment. Under North Carolina law, absent a lease provision to the contrary, a lease carries an implied warranty that the tenant will have quiet and peaceable possession of the leased premises during the term of the lease. *McNamara*, 121 N.C. App. at 406, 466 S.E.2d at 328. Defendant relies on *Dobbins v. Paul*, 71 N.C. App. 113, 321 S.E.2d 537 (1984), *overruled by Stanley v. Moore*, 339 N.C. 717, 454 S.E.2d 225 (1995), which stands for the principle that a landlord breaches the implied covenant of quiet enjoyment when he constructively evicts the tenant. We have already concluded that defendant was not constructively evicted and find no merit in defendant's argument. Therefore, defendant's argument that he was entitled to vacate the premises fails.

[5] On his third assignment of error, defendant argues that the trial court committed reversible error in calculating damages to plaintiff in the amount of $10,018.10. At trial, defendant did not except to the amount of the judgment for plaintiff. Furthermore, in the record on appeal, defendant did not except to the trial court's Finding of Fact No. 24 which states, "[t]he amount of the past due rent including water, sewer and power is $10,018.10." Defendant also failed to except to Finding of Fact No. 8 which states that it was defendant's responsibility to pay for water, sewer and power bills incurred during the term of the lease.

Plaintiff argues that defendant did not preserve the damages issue and therefore the matter is not properly before this Court. Where no exceptions have been taken to the findings of fact, the findings are presumed to be supported by competent evidence and are binding on appeal. *State v. Pendleton*, 339 N.C. 379, 389, 451 S.E.2d

274, 280 (1994); *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962). Plaintiff's argument with regard to Finding of Fact No. 24 lacks merit, but we agree with plaintiff that defendant failed to except to Finding of Fact No. 8.

In his reply brief, defendant argues that Finding of Fact No. 24 merely indicates that the total dollar amount of the various bills is $10,018.00, and does not indicate that defendant is obligated to pay that amount. In other words, defendant does not object to the trial court's calculations that the past due rent, HVAC repairs, water, power and sewer bills total $10,018.10. Instead, defendant objects to Conclusion of Law No. 5 that "[t]he plaintiff is entitled to a verdict in the amount of $10,018.10." Defendant did except in the record on appeal to Conclusion of Law No. 5.

We conclude that the issue of whether plaintiff is entitled to a verdict in the amount of $10,018.10 is properly before this Court. Defendant did not fail to preserve for appeal the issue of whether he is obligated to pay plaintiff $10,018.10 by his failure to except to Finding of Fact No. 24. We agree with defendant that Finding of Fact No. 24 merely represents the sum of the various bills in issue and does not indicate that defendant is obligated to pay that amount.

However, defendant also failed to except to Finding of Fact No. 8. According to Finding of Fact No. 8:

> [u]nder the terms of the lease, defendant assumed responsibility for water, sewer and power bills incurred during the term of the lease, which he paid until he vacated the property but not thereafter.

Finding of Fact No. 8 is inconsistent with defendant's argument that under the lease defendant was only responsible for utilities used by defendant while he was on the premises.

[6] Because defendant did not except to Finding of Fact No. 8, the finding is presumed to be correct and is binding on appeal. *See id.* The dispositive question on the issue before this Court is whether the trial court's finding of fact was sufficient to support its conclusion of law. *See Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 656-57 (1982).

We conclude that the trial court's finding of fact was sufficient to support its conclusion of law. Having determined that defendant

K&S ENTERS. v. KENNEDY OFFICE SUPPLY CO.

[135 N.C. App. 260 (1999)]

"assumed responsibility for water, sewer and power bills incurred during the term of the lease, which he paid until he vacated the property but not thereafter," the trial court had ample support for its conclusion of law that plaintiff was entitled to a verdict in the amount of $10,018.10, the sum of the bills in issue and the past rent due.

For the reasons stated herein, the judgment of the trial court is affirmed.

AFFIRMED.

Judge HORTON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

There is no competent evidence in this record to support the trial court's finding of fact that defendant was not denied "the use and benefits to which he was entitled under the terms of the lease." Accordingly, the conclusion of the trial court that defendant breached the lease is not supported by any finding of fact.

The lease specifically provided that defendant, as the lessee, had the "right to terminate [the] lease if at any time it is prevented from the full use and benefit and enjoyment of the building by reason of . . . any . . . cause beyond [its] control." As repair of the leaking roof was the responsibility of plaintiff, any restriction of defendant's use of the building, caused by the leaking roof, was "beyond" defendant's control.

The remaining question is whether defendant was denied the "full use" of the building as a consequence of the leaking roof. On this question, the evidence is not in dispute. Indeed all the evidence in this record is that the leaking roof denied defendant the use of a part of the building, thus denying it "full use" of the building. The leaks forced defendant to remove displays from the front of the building whenever it rained, leaving empty spaces that otherwise would have contained defendant's products. Due to the frequency of the leaks, defendant eventually removed products from shelves on the front wall of the building permanently and, instead, placed buckets on those shelves to catch the leaks. The leaks also forced defendant to remove displays from an aisle in the front of the building.

RUGGERY v. N.C. DEP'T OF CORRECTION

[135 N.C. App. 270 (1999)]

The fact that defendant remained in the building for an extended period of time during which the leaks occurred, does not constitute a waiver of defendant's right to terminate the lease on this grounds.[1] Indeed, plaintiff does not even make this argument. Furthermore, the fact that defendant did not notify plaintiff in writing of its reasons for vacating the premises is not material. The lease did not require written notice.

I therefore would reverse the judgment of the trial court and remand for entry of an order dismissing plaintiff's claims.

---

1. There is no logic to suggest, a position adopted by the majority, that because defendant remained on the premises for over three years he "was not prevented from the full use and enjoyment of the building."